UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDDIE LEWIS BREWSTER,

               Petitioner,               Civil No. 06-10766-BC
v.                                               Honorable Thomas L. Ludington

SUSAN DAVIS,

               Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING IN PART AND DENYING IN PART CERTIFICATE OF APPEALABILITY

Petitioner Eddie Lewis Brewster filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, a Michigan state prisoner, challenges his conviction for first-degree home invasion, Mich. Comp. Laws § 750.110a. Petitioner raises seven claims for relief. For the reasons explained hereafter, the petition will be denied.

**I.**

Petitioner's conviction arises from events that occurred at the home of Marilyn Moore and Wanda Roquemore in the City of Detroit on June 30, 2002.

Marilyn Moore testified that, on June 30, 2002, she lived on Alger Street in Detroit with her son Nicholas and her roommate Wanda Roquemore. At approximately 4:00 p.m., she was in her backyard when she saw a man in her neighbor's yard two houses away. He was coming toward her, jumping over fences. Moore testified that she ran into her house to call the police. The man, who she identified as Petitioner, entered her house and went to the second floor landing. He was prevented from proceeding any further because her dog was barking and growling at him. Petitioner then came back downstairs and attempted to exit through the kitchen. Her roommate, Roquemore,

was in the kitchen hollering at Petitioner to leave the house. Petitioner grabbed Roquemore and Moore thought he was going to choke her. Moore grabbed a crowbar from a utility closet, raised it over her head, and yelled at Petitioner to leave the house. Petitioner ran out the back door. Police arrived less than five minutes later and apprehended Petitioner.

Wanda Roquemore testified that she was in the home she shared with Marilyn Moore on June 30, 2002, when Moore ran into the house screaming that there was a man in their yard and she should call the police. Roquemore said that before she knew it a man she identified as Petitioner was in their home. Petitioner started to run upstairs, but was prevented from doing so by the family's dog. He returned downstairs, grabbed Roquemore's arms and pushed her backwards over the kitchen table. She fell to the floor. Petitioner fled the home. He attempted to escape by running through yards and climbing fences, but ended up perched on the top of a fence because of dogs.

Police Officer Sidney Taylor testified that he responded to the 911 call and found Petitioner perched atop a fence one house away from the Moore/Roquemore home. A group of neighbors were at the bottom of the fence, preventing Petitioner from leaving. Officer Taylor arrested Petitioner.

Petitioner testified that, on June 30, 2002, he and a friend, Frank, were in an empty lot where some men were playing horseshoes and selling drugs. One of the drug dealers attempted to take a beer from Frank. When Frank would not let the man have the beer, Petitioner heard the drug dealer make a threatening remark. Petitioner and Frank began walking away. One of the men asked them to "wait up." Petitioner testified that he then became scared for his life and started running. He testified that he ran towards Moore's backyard because he thought she could provide him some help. He ran into her home and claims to have asked one of the women to call the police because he was being chased. He attempted to exit the kitchen. Both women were yelling at him and the dog was

barking. He testified that he again asked them to call the police. As he tried to leave, one of the woman grabbed his arm and pulled him back. He snatched his arm away from her and she stumbled and fell. He testified that he waited on top of the fence for police because he was still afraid of the men who had been chasing him.

## II.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree home invasion. On October 31, 2002, he was sentenced as a habitual offender, fourth offense, to twenty-to-forty years in prison.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims for relief:

> I. The trial court erred reversibly and denied defendant due process of law when it failed to charge the jury with the specific intent instruction for first-degree home invasion, a crime predicated on assault.
>
> II. The trial court's deadlocked jury instruction was a substantial departure from the Michigan Standard Jury Instruction for deadlocked jury, CJI2d 3.12, and created reversible error because it suggested that the jury would have to continue deliberating until it reached a verdict.
>
> III. The trial court abused its discretion when it precluded counsel from participating in voir dire where the result was that counsel was denied a reasonable opportunity to determine whether jurors were subject to challenge.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Brewster*, No. 246820 (Mich. Ct. App. May 20, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Brewster*, No. 126305 (Mich. Nov. 22, 2004).

Petitioner then filed a petition for writ of habeas corpus in this Court. The Court stayed the

petition so that Petitioner could return to state court to exhaust additional claims. Petitioner has now requested that the Court lift the stay and address his claims on the merits.

### III.

Petitioner is not entitled to habeas corpus relief unless the state court's adjudication of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). And, under 28 U.S.C. § 2254(e)(1), a state court's factual determinations are presumed to be correct unless the habeas petitioner rebuts them with clear and convincing evidence.

Granting a habeas petition under the "contrary to" clause is only appropriate "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 326, 412-13 (2000). A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions, but unreasonably applies that principal to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, a habeas court must ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

A federal habeas court must also presume the correctness of state court factual

determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV.

Petitioner raises the following claims in his habeas petition:

I.  Trial court failed to instruct the jury regarding the specific intent element for first-degree home invasion.

II.  The deadlocked jury instruction coerced the jury into reaching a verdict.

III.  The trial court's voir dire of prospective jurors did not reveal sufficient information to allow the petitioner to make challenges of cause.

IV.  The petitioner was entitled to a jury instruction on a lesser included offense.

V.  The petitioner was denied the effective assistance of appellate counsel for failing to raise the claims raised in his motion for relief from judgment.

VI.  The petitioner was denied the effective assistance of trial counsel.

VII.  The trial court erroneously failed to instruct the jury on the lesser offense of breaking and entering.

VIII.  *People v. Mendoza*, 468 Mich. 527 (2003), should be applied retroactively to allow for a breaking and entering instruction.

Several of Petitioner's claims are closely related and will be addressed together. The Court will first address the appropriateness of the home invasion instruction (Claim I); the Court will then address the deadlocked jury instruction (Claim II); the Court will then turn to whether voir dire was sufficient (Claim III); the Court will next consider whether an instruction concerning lesser included offenses was required (Count IV, VII, and VIII); the Court will then consider the effectiveness of Petitioner's trial counsel (Claim VI); and, finally, the Court will address the effectiveness of Petitioner's appellate counsel (Claim V). Although Respondent argues that some of Petitioner's claims are procedurally defaulted, the interest of judicial economy is better served by addressing the

merits of Petitioner's claims. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003).

## A.

Petitioner argues that the jury instructions were inadequate because the trial court failed to instruct the jury regarding the specific intent element of first-degree home invasion.

Generally, challenges to jury instructions are not cognizable on federal habeas review unless the instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citation and quotation marks omitted). It is not enough to show that an instruction was incorrect under state law. *Id.* at 71-72. "To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (citation and quotation marks omitted) "When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the instruction 'in an unconstitutional manner.'" *Id.* at 455 (quoting *Victor v. Nebraska*, 511 U.S. 1, 6 (1994)).

The Michigan Court of Appeals concluded that the instructions properly explained the intent necessary for a conviction. The state court held that the trial court's instructions properly presented all of the elements of first-degree home invasion, including the necessary intent. *Brewster*, slip op. at 2. Where a state appeals court finds that the instruction given by the trial court accurately reflected state law, this Court must defer to that determination. *Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000). In this case, because the Michigan Court of Appeals determined that the jury instruction accurately reflected the intent necessary for the charged offense, Petitioner is not entitled to habeas relief on his claim regarding specific intent.

**B.**

Petitioner next argues that the trial court erred by giving an unduly coercive deadlocked jury instruction.

When a jury is deadlocked, a trial court may give a supplemental charge urging the jury to continue its deliberations in order to arrive at a verdict. *See Allen v. United States*, 164 U.S. 492 (1896). The constitutionality of a deadlocked jury instruction depends upon whether the instruction in question was "coercive." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988).

In *Allen*, the Supreme Court approved a jury instruction which, in substance, advised the jury that:

> in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, on the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Id.* at 501.

In this case, after deliberating for approximately four-and-a-half hours, the jury sent a note to the court with a single word: "Deadlocked." In response, the court gave the Michigan standard deadlocked jury instruction, and added the following instruction at the end of the standard instruction: "Sometimes it takes jurors four hours to reach a verdict, sometimes four days, sometimes four weeks. I am going to ask you to go back into the jury room and continue deliberating." Tr., Vol. III at 35. Petitioner argues that this additional instruction was unduly coercive.

The Michigan Court of Appeals held that the instruction was not impermissibly coercive, stating, in relevant part:

> Defendant claims that [trial court's] additional comments conveyed the message that the court would require the jury to deliberate until it reached a verdict. However, the trial court did not state that the jury had to deliberate until it reached a verdict. The additional language contained no pressure, threats, embarrassing assertions, or other wording that would constitute coercion. . . . Additionally, the trial court did not require, or threaten to require, the jury to deliberate for an unreasonable length of time. . . . We find that the trial court's instructions were not a substantial departure from the standard instructions.

*Brewster*, slip op. at 2.

An instruction which appears to give a jury no choice but to return a verdict is impermissibly coercive. *See Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam). In *Jenkins*, after about two hours of deliberation, the jury sent a note informing the district judge that it was deadlocked. *Id.* The district judge called the jury into the courtroom and "in the course of his response stated that 'You have got to reach a decision in this case.'" *Id.* The Supreme Court found the instruction to constitute plain error and reversed and remanded the case for a new trial. *Id.*; *see also Brasfield v. United States*, 272 U.S. 448, 450 (1926) (concluding that an inquiry into how the jury is divided is unduly coercive).

The trial judge's comments to the jury were close to the constitutional line. To suggest after only a few hours of deliberations that the jury may be retained for a month is not a practice that should be encouraged. Nevertheless, it is not as coercive as instructing the jury that "[y]ou have got to reach a decision in this case." *Jenkins*, 380 U.S. at 446. The trial judge suggested that the decision may take a significant amount of time, but she did not insist that a decision be reached. Petitioner has not identified a case where the Supreme Court has concluded that a similar instruction, suggesting that deliberations may continue for a lengthy period of time, is unduly coercive. *See*

*Williams*, 529 U.S. at 412-13.

Importantly, when the trial court asked the jury to return to their deliberations, the objectionable comment about the potential length of their service was tempered by her insistence that they rely on their own judgment. The trial judge emphasized that "none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think, or only for the sake of reach agreement." Accordingly, while the trial judge's comment may have been, in this Court's view, inappropriate, the Michigan Court of Appeals decision approving it was not objectively unreasonable. 28 U.S.C. § 2254(d). Habeas relief on this claim is, therefore, denied.

### C.

Petitioner next claims that he was denied his right to a fair and impartial jury when the trial court conducted voir dire, allowing the attorneys only to submit written questions to the court. Petitioner argues that this prevented defense counsel from eliciting information necessary to develop a rational basis for excluding jurors.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The right to an impartial jury is made applicable to the states by the Fourteenth Amendment. *Turner v. Louisiana*, 379 U.S. 466 (1965). Jury voir dire "is designed 'to protect [this right] by exposing possible biases, both known and unknown, on the part of potential jurors.'" *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003).

"No hard-and-fast formula dictates the necessary depth or breadth of voir dire." *Skilling v. United States*, 130 S. Ct. 2896, 2917 (2010), (citing *United States v. Wood,* 299 U.S. 123, 145-146

(1936)). Supervision of voir dire, for the most part, is left to a trial courts "sound discretion." *Ristaino v. Ross*, 424 U.S. 589, 594 (1976) (citation omitted). The exercise of the trial court's discretion is "subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310 (1931). "The Constitution requires only that voir dire be conducted in a manner which ensures fundamental fairness." *Dennis v. Mitchell*, 354 F.3d 511, 524 (6th Cir. 2003).

The Michigan Court of Appeals held that the trial court's questioning was sufficient to determine whether any juror was potentially biased, noting that Petitioner did not challenge any of the questions asked by the trial court or to identify an area where the jurors could have been questioned more thoroughly. *Brewster*, slip op. at 2-3. Petitioner had an adequate opportunity to question the prospective jurors by submitting written questions to the trial court. He has not shown that the restrictions placed on him during voir dire impeded his right to exercise peremptory challenges or to discover and eliminate biased jurors. The state court's decision was not contrary to or an unreasonable application of Supreme Court precedent.

**D.**

In his fourth, seventh and eighth claims for habeas corpus relief, Petitioner argues that the jury instructions were constitutionally deficient because, at the time of his trial, breaking and entering was considered a cognate offense of first-degree home invasion, rather than a necessarily included lesser offense. Therefore, according to Petitioner, the trial court should have instructed the jury on breaking and entering—also called third degree home invasion—as a lesser included offense to first degree home invasion. *See* Mich. Comp. Laws § 750.110a.

This claim is not cognizable on habeas review. The Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital

case. *See Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (holding that a trial court is required to instruct on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant). However, "the Constitution does not requires a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also*, *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). At a minimum, there is no clearly established Supreme Court precedent which requires a trial court to provide a requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1). *See Samu v. Elo*, 14 F. App'x 477, 479 (6th Cir. 2001).

Moreover, in this case, Petitioner apparently did not even request a breaking and entering instruction. There is certainly no constitutional requirement for the trial judge to sua sponte provide a lesser included instruction in a noncapital case. Habeas relief is denied on this claim.

**E.**

Petitioner argues that his trial attorney was ineffective in failing to request a jury instruction on breaking and entering.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced

the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citation and quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. To prevail a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. . . . When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

The trial court denied Petitioner's motion for relief from judgment, concluding that trial counsel's decision not to request a breaking and entering instruction was constitutionally sufficient. The trial court reasoned that the defense presented at trial was one of duress. This defense theory was clear throughout trial in the questioning of witnesses and closing arguments. Counsel argued that Petitioner had to enter the home to protect his life. Counsel's strategy was for the jury not to consider the lesser offense. The trial court concluded that this trial strategy was reasonable. *People v. Brewster*, No. 02-008746 (Wayne County Cir. Ct. Oct. 15, 2007).

While another attorney may have proceeded differently, "[t]here are . . . 'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'" *Richter*, 131 S. Ct. at 788-89 (citation omitted). Competent counsel need not be "a flawless strategist or tactician" and "an attorney may not be faulted for a reasonable miscalculation." *Id.* at 791. At worst, defense counsel's decision not to request a breaking and entering instruction was a reasonable miscalculation, which falls far short of *Strickland*'s high bar.

### F.

Finally, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. As discussed above, the Court determined that the interests of judicial economy were best served by addressing the merits of Petitioner's defaulted claims. Nevertheless, the Court will briefly address Petitioner's ineffective assistance of appellate counsel claim.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims Petitioner raised on collateral review and in his habeas petition. Petitioner has not demonstrated that any of these claims were potentially meritorious. Therefore, Petitioner cannot show that his appellate attorney was ineffective for failing to raise them on direct appeal.

## V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that this Court decide whether to issue the COA when it enters the final decision in a habeas case.

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusions with respect to the majority of Petitioner's claims. The claim with regard to the deadlocked jury instruction, discussed in part IV.B. above, however, is debatable. Therefore, a certificate of appealability will be issued

with respect to Petitioner's claim that the trial court's deadlocked jury instruction was too coercive, but denied with respect to the remainder of his claims.

## VI.

Accordingly, it is **ORDERED** that the amended petition for a writ of habeas corpus [Dkt. # 28] is **DENIED WITH PREJUDICE**.

It is further **ORDERED** that a certificate of appealability is **GRANTED IN PART AND DENIED IN PART**. A certificate of appealability will be granted with respect to Petitioner's claim that the trial court's deadlocked jury instruction was too coercive, but denied with respect to the remainder of his claims.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 28, 2011

---

**PROOF OF SERVICE**
The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Eddie Brewster, #137758, at Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI 49784 by first class U.S. mail on March 28, 2011.
s/Tracy A. Jacobs
TRACY A. JACOBS